UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Naser Jewelers, Inc.,
    Plaintiff

    v.                                            Civil No. 06-cv-400-SM
                                                Opinion No. 2007 DNH 081

City of Concord, New
Hampshire,
    Defendant

**O R D E R**

Plaintiff Naser Jewelers, Inc. ("NJI") challenges the City of Concord's ordinance banning Electronic Message Center ("EMC") signs. In a Report and Recommendation dated November 22, 2006 (document no. 17), the Magistrate Judge recommended that plaintiff's request for preliminary injunctive relief be denied (document no. 4).

Before the court is plaintiff's objection to the Magistrate Judge's Report and Recommendation (document no. 19). After due consideration of the objection, the Magistrate Judge's Report and Recommendation is approved and his recommendation adopted, but on somewhat different grounds. Accordingly, plaintiff's motion for a preliminary injunction is denied.

**Standard of Review**

A Magistrate Judge's Report and Recommendation on a motion for injunctive relief is reviewed de novo.  28 U.S.C. § 636(b)(1).  This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate . . . or recommit the matter to the magistrate with instructions."  Id.; see also FED. R. CIV. P. 72(b).

**Background**

The factual background of this case is set forth in detail in the Magistrate Judge's Report and Recommendation.  In brief, the dispute involves a City regulation, Ordinance 2653 (the "Ordinance"), that, inter alia, prohibits signs that move or create the illusion of movement, signs which are or appear to be animated or projected, signs that affect or look similar to traffic signs or signals, and "electronic message center type signs."[1]

---

[1] The version of the revised ordinance provided to the Magistrate Judge at the hearing was apparently filed in error. That version additionally prohibited "manually changeable copy type signs, except for the placement of a temporary manually changeable copy sign as allowed under [a separate ordinance]." Concord subsequently filed a corrected copy of Ordinance 2653, which does not prohibit "manually changeable copy type signs." See Pl.'s Am. Answer, Ex. A (document no. 26).

The current Ordinance was enacted in response to a lawsuit that challenged a prior version – one that prohibited all EMCs except those that displayed current time, date, and temperature ("TDT"). In that suit, Carlson Chrysler v. City of Concord, No. 05-E-412 (New Hampshire Superior Court, Merrimack County), the trial court found the ordinance allowing only TDT EMCs unconstitutional, as an unlawful content-based regulation of commercial speech. Concord has appealed that decision to the New Hampshire Supreme Court.

In response to the Superior Court ruling, Concord revised its ordinance to eliminate any suggestion of content-based regulation, choosing to instead prohibit all EMCs, without regard to message content. NJI challenges the new ordinance under 42 U.S.C. § 1983, claiming it also unconstitutionally burdens the right to free speech. NJI seeks to enjoin Concord from enforcing the Ordinance and, as noted, after a hearing on the matter, the Magistrate Judge recommended that the court deny the motion.

**Discussion**

NJI posits fourteen separate objections to the Magistrate Judge's recommendation. Essentially, it says the Magistrate Judge applied the wrong legal standard of review (objections 1

and 5), erroneously characterized NJI's speech as merely commercial (objection 2), misapplied the test described in Central Hudson Gas & Elec. v. Pub. Serv. Comm'n, 447 U.S. 557 (1980) to the facts (objections 3, 4, 6, 7, 8, 9, 10, and 11),[2] and drew a number of incorrect conclusions (objections 12, 13, and 14).

    Although the parties and the Magistrate Judge provide extensive and informative analyses of issues arising under the Central Hudson framework, I find that the issues before the court are subject to more direct resolution.  Because, as discussed more fully below, the City's current EMC ban is content neutral, the court need not apply the commercial speech test set forth in Central Hudson, but should instead resolve the matter under the time, place, and manner test described in Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  See Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 212 (1st Cir. 2002).

---

[2] Those objections each address various aspects of the relevant inquiries necessary to properly resolve this case. Objection 4 asserts that the Magistrate Judge erred in not applying the test set forth in City of Ladue v. Gilleo, 512 U.S. 43 (1994).  Objections 3 and 8 contend that the Magistrate Judge erred in applying the Central Hudson test, while objections 6, 7, 9, 10, and 11 all relate to specific elements of the Central Hudson test.

Initially, NJI objects to the preliminary injunction standard applied by the Magistrate Judge,[3] arguing that, because this case involves a constitutional challenge to an ordinance, NJI is entitled to a presumption of success on the merits. NJI relies on <u>Ashcroft v. ACLU</u>, 542 U.S. 656, 666 (2004) which explained that in cases in which the government "bears the burden of proof on the ultimate question of [a regulation's] constitutionality," the party seeking a preliminary injunction "must be deemed likely to prevail" unless the government can demonstrate that the challenged statute is constitutional. As described below, however, the City made such a showing in this case. The record, albeit relatively undeveloped at this early

---

[3] As the Magistrate Judge explained, a preliminary injunction is appropriate only when the moving party satisfies a four-factor test. <u>See</u> <u>Esso Std. Oil Co. v. Monroig-Zayas</u>, 445 F.3d 13, 17-18 (1st Cir. 2006); <u>see also</u> <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (explaining that the burden is on the moving party). The moving party must establish: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." <u>Esso Std. Oil Co.</u>, 445 F.3d at 18. Although each factor is important, the Court of Appeals has noted that the likelihood of success on the merits is the "'sine qua non' of a preliminary injunction analysis . . ." <u>SEC v. Fife</u>, 311 F.3d 1, 8 (1st Cir. 2002) (quoting <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993)).

stage of the litigation, amply supports the conclusion that the Ordinance is likely constitutional.

It is undisputed that the EMC signs at issue fall within the concept of "speech" protected by the First Amendment. See City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994). It is also undisputed that the City may regulate the display of signs to the extent necessary to serve legitimate governmental purposes, so long as its regulation does not unduly impose upon protected constitutional rights. Id. And, it is apparent that the Ordinance does not aim to advance or suppress any particular viewpoint or message conveyed by the type of signs it prohibits. In other words, the ordinance banning EMC-type signs is properly characterized as a "content-neutral" regulation in that it does not seek to regulate based on the nature of the message sought to be communicated. See Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd., 502 U.S. 105, 122 n. * (1991); Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); see also Asociacion de Educacion Privada de P.R., Inc. v. Garcia-Padilla, --- F.3d. ---, 2007 U.S. App. LEXIS 8295, *33-34 (1st Cir. Apr. 11, 2007).

To survive a constitutional challenge, content-neutral regulations must meet an "intermediate scrutiny" test, that is, they must be "narrowly tailored to serve a significant governmental interest, and allow[] for reasonable alternative channels of communication." Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 212 (1st Cir. 2002) (internal quotation marks and citations omitted); see Ward, 491 U.S. at 791. "Under intermediate scrutiny, restrictions imposed by a statute need not be the least restrictive or least intrusive means of accomplishing the statute's legitimate governmental interest." Garcia-Padilla, 2007 U.S. App. LEXIS 8295, *35 (citing Ward, 491 U.S. at 798-99). "Rather, narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively without it, or if 'the means chosen are not substantially broader than necessary to achieve the government's interest.'" Id. (citing Ward, 491 U.S. at 799-800) (internal citation omitted).

Concord asserts that its outright ban on EMCs advances both important traffic safety and community aesthetics interests, each of which constitutes a substantial governmental interest. See

Metromedia v. City of San Diego, 453 U.S. 490, 507-08 (1981);[4] see also Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 551 (2001); Riel v. City of Bradford, --- F.3d ---, 2007 U.S. App. LEXIS 10346, *36 (3d Cir. May 3, 2007); La Tour v. City of Fayetteville, 442 F.3d 1094, 1097 (8th Cir. 2006); Ballen v. City of Redmond, 466 F.3d 736, 742 (9th Cir. 2006).

    NJI disagrees, arguing that Concord's total ban on EMCs is not narrowly tailored to serve purported governmental interests because the City has no basis upon which to think that EMCs adversely affect traffic safety.[5]  But the City "need not provide detailed proof that the regulation advances its purported

---

[4] Although Metromedia was a plurality opinion, seven justices agreed that traffic safety and aesthetics are substantial governmental interests.  See Metromedia, 453 U.S. at 510 (plurality); id. at 549-53 (Stevens, J., dissenting in part); id. at 560-61 (Burger, C.J., dissenting); id. at 570 (Rehnquist, J., dissenting).

[5] NJI also claims that aesthetics alone does not constitute a substantial governmental interest sufficient to warrant a total ban on EMCs.  The court disagrees.  See Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984) (citing cases that "indicate that municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression"); Am. Legion Post 7 v. City of Durham, 239 F.3d 601, 610 (4th Cir. 2001) (explaining that while aesthetics do not constitute a compelling governmental interest sufficient to justify a content-based regulation, they constitute a substantial governmental interest sufficient to warrant a content-neutral restriction).

interests of safety and aesthetics." Ctr. for Bio-Ethical Reform, Inc. v. City & County of Honolulu, 455 F.3d 910, 922 (9th Cir. 2006) (citing Ackerley Commc'ns of the Nw. v. Krochalis, 108 F.3d 1095, 1099-100 (9th Cir. 1997)). Indeed, when considering the constitutional viability of a regulation, the court need not "determine whether the regulation is sound or appropriate; nor is it [the court's] function to pass judgment on [the regulation's] wisdom," Ry. Express Agency, Inc. v. New York, 336 U.S. 106, 109 (1949), because doing so "would be trespassing on one of the most intensely local and specialized of all municipal problems. . . ." Id. In short, it is within the City's authority to determine for itself that a particular ordinance will, in fact, advance its substantial governmental interests, and such findings shall not generally be disturbed by a court unless shown to be "palpably false." Id.

Concord has plausibly determined that EMCs and similar types of signs, as described in the Ordinance, are likely to prove distracting to drivers to the extent the signs are visible from roadways, thereby adversely affecting traffic safety. That legislative conclusion is hardly unreasonable, and would appear to be supported by common sense. See e.g., Chapin Furniture Outlet v. Town of Chapin, 2006 WL 2711851, *4 (D.S.C. Sept. 20,

2006) (town's judgment that flashing or scrolling signs constitute a traffic hazard not unreasonable).  And, while taste and aesthetic sensitivity are debatable topics, it would seem well within the City's legitimate discretion to conclude that bright, colorful, electronic signs that change color and messages — or signs similar to those, are inconsistent with the aesthetic values the City seeks to promote.

The Ordinance is also sufficiently narrowly tailored.  The City has not prohibited all signs, or even all signs displaying changed copy.[6]  The Ordinance prohibits only those signs the City plausibly thinks will adversely affect traffic safety, or prove detrimental to aesthetic values the City seeks to promote.  Similarly, the Ordinance leaves NJI with reasonable alternative channels by which to communicate its messages.  Although "other types of signs may lack the flexibility or convenience of an EMC," NJI remains free to employ a variety of other communicative

---

[6] The constitutionality of the originally-filed Ordinance, which purported to ban, inter alia, all "manually changeable copy type signs," would pose a different question entirely.  Such a broad ban might well extend beyond what is necessary to address the City's interest in traffic safety or aesthetics.  The City would have a difficult time supporting the notion that all manually changeable copy signs like those seen outside virtually every gas station, fast food restaurant, church, and movie theater pose a substantial threat to the safety or aesthetics of Concord's commercial zones.

methods, including static signs or varying types of changeable copy signs, and it remains free "to 'speak' on whatever issue it pleases utilizing a medium not proscribed by [the Ordinance]." Chapin Furniture Outlet, Inc., 2006 WL 2711851, *4.[7]

In sum, Concord's governmental interests in promoting traffic safety and aesthetic values are substantial. The City's Ordinance banning EMCs and similar signs appears narrowly tailored to enhance traffic safety and promote aesthetic values, while still allowing for ample, reasonable alternative channels of communication. On this preliminary record, it appears that Ordinance 2653 passes constitutional muster, which in turn means that NJI has failed to demonstrate that it is likely to succeed

---

[7] NJI objects to the Magistrate Judge's finding that Concord's EMC ban still leaves ample alternative channels for NJI's communications. NJI appears to miss the central point of the "alternative channels" inquiry, however, focusing not on whether NJI has alternative methods by which to disseminate its message, but instead, on whether the City's total ban on EMCs was the least restrictive means available to achieve its governmental interests. See Pl.'s Supplemental Objections 3. As discussed previously, whether a regulation is the least restrictive or least intrusive means of accomplishing the government's objectives is not the relevant inquiry in determining whether a regulation is "narrowly tailored." Garcia-Padilla, 2007 U.S. App. LEXIS 8295, *35 (citing Ward, 491 U.S. at 798-99). Narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively without it." Id. (citing Ward, 491 U.S. at 799).

on the merits.  Therefore, NJI is not entitled to a preliminary injunction.

### Conclusion

For the foregoing reasons, plaintiff's motion for a preliminary injunction (document no. 4) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 25, 2007

cc: Douglas M. Bragg, Esq.
    John F. Winston, Esq.
    Stephen H. Roberts, Esq.
    Charles P. Bauer, Esq.
    Lisa Lee, Esq.